UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                              Plaintiff

v.                                                         Criminal Action No. 3:24-cr-22

CLARENCE ANDREW STIFF                                                 Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Clarence Stiff ("Stiff") moves to suppress all evidence obtained during his arrest pursuant to the Fourth Amendment to the Constitution. [DE 25]. The United States opposes the motion. [DE 26; DE 27]. The Court held an evidentiary hearing on September 25, 2024. [DE 28; DE 36 ("Hearing Transcript")]. The parties filed post hearing briefs. [DE 40; DE 41; DE 43]. This matter is ripe. For the reasons below, Stiff's Motion to Suppress [DE 25] is **DENIED**.

**I.      BACKGROUND**

On October 20, 2023, Homicide Detective Noah Straman with the Louisville Metro Police Department (LMPD) applied for a search warrant to collect DNA evidence from Stiff in relation to a homicide investigation. [DE 25-2 at 62]. The DNA search warrant was signed by Jefferson County District Court Judge Stephanie P. Burke, granting law enforcement the authority to search Stiff's person and "collect any and all trace evidence including blood, saliva, physiological fluids, hair, fibers, fingerprints, palm prints, footprints, buccal swabs, shoeprints, photographs and relevant clothing" as part of a criminal investigation (the "DNA Search Warrant"). [DE 25-1; DE 26 at 69-70]. Louisville Metro Police Department's ("LMPD") Detective Christopher Marks, Detective Noah Straman, and Officer Jarrett Goff testified that there were "no active arrest warrants" for Stiff when they executed the search warrant. [DE 36 at 127-9, 165, 172].

On October 27, 2023, LMPD detectives, aware of the active DNA Search Warrant and homicide investigation, observed Stiff at a gas station convenience store located at 3400 Taylor Boulevard. [DE 26 at 69]. Detective Goff drove to the gas station and waited in the parking lot with Detective Marks, LMPD Detective Jada Grady, and LMPD Sergeant Joshua Arnwine for Stiff to exit the store to execute the DNA Search Warrant. [DE 36 at 173]. Additional officers arrived on the scene later. [*Id.*]. None of the vehicles at the gas station were marked as police vehicles. [*Id.* at 174-5]. And all the officers were in plain clothing, except a few officers were wearing vests with "Police" printed on the front and back. [*Id.* at 149]. Detective Goff testified that LMPD did not have buccal swab technician on the scene, however, he planned to call one to the scene to execute the DNA Search Warrant if officers successfully detained Stiff. [*Id.* at 178].

Once Stiff left the convenience store, Detective Marks exited his vehicle and began yelling "stop, stop, stop, stop, stop, police stop," while Stiff mounted his bike. [Ex. 1A at 0:29]. Stiff continued to get on his bike and was then hit by an unmarked police vehicle approaching Stiff in the parking lot. [Ex. 1A at 0:32]. After being hit, Stiff quickly ran behind a vehicle in the gas station parking lot. [Ex. 1A at 0:33]. Stiff was then quickly detained by Detective Marks, Detective Derby, and Officer Goff behind the parked car. [DE 36 at 134]. Detective Marks asserts that they were detaining Stiff to execute the search warrant. [*Id.* at 136].

To detain Stiff, Detective Marks, Detective Derby, and Officer Goff "picked him up and moved him to the side of the car" and "placed him in handcuffs." [*Id.* at 136; Ex. 1A at 0:47-0:53]. Once the handcuffs were applied, Stiff spontaneously said "I've got my gun!" [Ex. 1A at 0:44]. When Stiff was pulled to a standing position, he reiterated to officers "I have a gun right here," and gestured to the front of his sweatshirt pocket. [Ex. 2A at 1:14]. Subsequently, officers observed the handle of a revolver in plain sight sticking out of his sweatshirt hoodie pocket and removed

2

the revolver. [DE 36 at 136; *see also* Ex. 2A at 1:17]. Detective Marks testified that he was aware of Stiff's record as a felon, and thus, arrested Stiff after the firearm was discovered. [*Id*. at 140]. Stiff was charged with fleeing from police and possession of a handgun by a convicted felon. [*Id*.]. After his arrest, the DNA Search Warrant was executed. [*Id*. at 141].

## II.     FOURTH AMENDMENT CLAIM

### A. Standard.

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The defendant's burden extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

Generally, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed." *United States v. Abdi*, 463 F.3d 547 (6th Cir. 2006) (citation omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable . . . officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "An arresting officer's state of mind, except for the facts that he knows, is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

### B. Analysis

Neither party disputes that the DNA Search Warrant executed on October 27, 2023, was not an arrest warrant, but only a search warrant. And neither party disputes the validity of the DNA Search Warrant. However, Stiff argues that LMPD officers executed a warrantless arrest to serve the DNA Search Warrant, while the United States asserts Stiff was only detained in order to execute the DNA Search Warrant. [DE 40 at 5; DE 41 at 5]. The United States argues that Stiff was properly detained to execute the DNA Search Warrant because detectives knew (1) "Stiff's long history of violence," (2) "Stiff was considered armed and dangerous, and was a violent offender," and (3) that Stiff "was a person of interest in an ongoing homicide investigation." [DE 41 at 5]. In sum, the United States argues that detaining Stiff to execute the DNA Search Warrant was proper under the Fourth Amendment because it would minimize the risk of harm to officers and others. *See Michigan v. Summers*, 452 U.S. 692, 702–03 (1981).

Law enforcement officers have the limited authority to briefly detain those on the scene as they execute a search warrant. *Cherrington v. Skeeter*, 344 F.3d 631, 638 (6th Cir. 2003). The seizure of such individuals may be reasonable under the Fourth Amendment if the detention would prevent flight, minimize the risk of harm to officers and others, or facilitate the orderly completion of the search. *See Summers*, 452 U.S. at 702-03; *Cherrington*, 344 F.3d at 638 (citing *Burchett v. Kiefer*, 310 F.3d 937, 943 (6th Cir. 2002)).

As an initial matter, the Court finds that Stiff was seized when LMPD officers removed Stiff from underneath the parked vehicle at the gas station and prevented Stiff from leaving. [Ex. 2A at 0:36]. The parties do not dispute this point, and this determination comports with Sixth Circuit precedent. *See United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011).

Here, because LMPD had a valid DNA Search Warrant, the constitutionality of this seizure should be analyzed under the general reasonableness standard and the considerations found in *Summers*. 452 U.S. at 702-03. It was reasonable for Detective Marks, Detective Derby, and Officer Goff to temporarily detain Stiff by removing him from underneath the car and putting him in handcuffs. *See, e.g., United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (finding that handcuffing "is appropriate even when police are merely detaining, but not arresting, a suspect."); *Summers*, 452 U.S. at 702-03. For one, detaining Stiff would prevent flight, and thus, would facilitate in the execution of the DNA Search Warrant because Stiff's DNA is the object of the warrant and difficult to obtain without physical control over the defendant.[1] Officer safety concerns also justified the brief detention because there was reason to believe that Stiff was armed and dangerous. Accordingly, detaining Stiff to execute the DNA Search Warrant was reasonable, and it does not rise to the level of a warrantless arrest.

But, once officers began detaining Stiff, he spontaneously admitted that he was in possession of a firearm. [DE 36 at 136; *see also* Ex. 1A at 0:44]. An "arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law," and the arrest occurs in public. *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (citation omitted). Here, Stiff's spontaneous admission of the gun, the officers' observance of the gun and awareness of his violent history and that he was potentially armed and a convicted felon, gave officers probable cause to search him. *See Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) ("Probable cause exists when there

---

[1] 'Buccal cell collection involves wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells. The procedure is quick and painless." *Maryland v. King*, 569 U.S. 435, 444 (2013) (citation and internal quotation marks omitted). The swab touches inside an arrestee's mouth, but it requires no "surgical intrusio[n] beneath the skin," *Winston v. Lee*, 470 U.S. 753, 760(1985), and it poses no "threa[t] to the health or safety" of arrestees. *Id*. at 763.  It does involved some physical control over the defendant to collect.

is a fair probability that contraband or evidence of a crime will be found in a particular place.") (citations and quotations omitted). Once the search was complete, Stiff was found in possession of a firearm. Because Stiff was a felon, the firearm gave Detective Marks, Detective Derby, and Officer Goff probable cause to arrest. And because Stiff's arrest occurred in public, his warrantless arrest was reasonable. *See United States v. Watson*, 423 U.S. 411, 417-24 (1976); *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed.").

Stiff also argues that the police never intended to only execute the DNA Search Warrant but always planned to arrest Stiff as evidenced by the fact that officers failed to bring the search warrant and the necessary equipment to execute the buccal swab to the scene. [DE 40 at 5]. However, as the Supreme Court stated in *Whren v. United States*, 517 U.S. 806, 813 (1996), "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Thus, Stiff's initial detainment and subsequent arrest do not violate the Fourth Amendment.

## CONCLUSION

For the reasons explained, and the Court being otherwise sufficiently advised, Stiff's motion to suppress evidence obtained in violation of his Fourth Amendment rights [DE 25] is **DENIED**.

January 14, 2025

Rebecca Grady Jennings, District Judge
United States District Court